IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        Appellee,

v.                              Appeal No. 22-4352

RHONDA NOTGRASS,

        Appellant.

## MEMORANDUM BRIEF

This appeal arises from the district court's June 15, 2022, order denying Rhonda Notgrass' motion to amend the order setting bond and imposing conditions on her release on that bond. Dkt No. 20.[1] That order is attached to this memorandum as Exhibit A.[2] This Court has jurisdiction to review such matters under 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291.

In appeals dealing with issues of bond, this Court is to "promptly determine the appeal on the basis of papers, affidavits, and parts of the record that the parties present or the court requires." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001). On appeal, "the question becomes whether the evidence as a whole supports

---

[1] "Dkt. No" refers to the filing in the court below in *United States v. Notgrass*, 2:22-cr-00110 (S.D. W. Va. 2022).

[2] In addition to that order, attached to this memorandum are the transcript from Notgrass' initial appearance where bond was initially set (Exhibit B), as well as copies of the Pretrial Services Report (Exhibit C) and addendum to that report (Exhibit D), filed under seal.

the conclusions of the proceedings below." *Ibid.* citing *United States v. Trosper*, 809 F.2d 1107, 1111 (5th Cir. 1987). Although some deference is given to the district court's findings, such deference "cannot be total." *United States v. Williams*, 753 F.2d 329, 333, n.12 (4th Cir. 1985). Deference to the district court "cannot insulate from correction findings supported by no evidence or by evidence so lacking in merit as to render the district judge's decision clearly erroneous . . . [o]therwise, any possibility of success by [a party] on appeal of an order admitting to bail would be eliminated." *Ibid.* Ultimately, "appellate review of detention or release orders is plenary, at least as to mixed questions of law and fact, and independent, with due deference accorded to the trial court's purely factual findings." *United States v. Montalvo-Murillo*, 876 F.2d 826, 830 (10th Cir. 1989)(collecting cases).

## ISSUES FOR REVIEW

1. Whether the imposition of a condition of release allowing the probation officer to require Notgrass to submit to drug testing, in spite of having no history of substance use or abuse, is consistent with the Bail Reform Act and, if so, whether such a condition violates the Eighth Amendment.

2. Whether a condition that vests in a probation officer the discretion whether to order Notgrass to submit to drug testing is an improper delegation of judicial authority.

2

## STATEMENT OF CASE

On June 1, 2022, an indictment was returned in the Southern District of West Virginia charging Notgrass with theft of funds in excess of $1000 from the United States, in violation 18 U.S.C. § 641. Dkt. No. 1. On June 10, 2022, Notgrass appeared before a magistrate judge for an initial appearance and arraignment on the indictment, appearing pursuant to a summons. Exhibit B at 2.

After discussing trial scheduling matters, the magistrate judge "move[d] on to the issue of bond," noting that the "United States is not moving to detain." Exhibit B at 7. After going over the bond itself with Notgrass, the magistrate judge turned to the conditions of bond set forth in the Order Setting Conditions of Release. Exhibit B at 10; Dkt. No. 15. The magistrate judge highlighted a condition (the "testing condition") that "you have to submit to testing for prohibited substances if required by the pretrial services office or supervising officer." Exhibit B at 13. This was in addition to conditions requiring that Notgrass not violate the law, "use alcohol at all," or "use or unlawfully possess a narcotic drug or other controlled substance unless it's prescribed by a licensed medical practitioner." *Id.* at 11, 12-13. Notgrass said that she understood that condition. *Id.* at 13.

After the magistrate judge had covered the conditions of bond, Notgrass objected to the drug testing condition. Exhibit B at 15. She argued that she was "45 years old, doesn't have so much as a speeding ticket" and there was "no indication

3

she's ever had any problems with substance abuse whatsoever." *Ibid.* Noting that "there is no objection to . . . prohibiting her from using drugs, it seems more restrictive than necessary to submit her to regular testing when there's no indication whatsoever that she has or has ever had any kind of drug problem." *Ibid.* The magistrate judge pointed out that testing only occurs "if required" and that there "is nothing that is required of her to do that right now." *Ibid.* Rather, "if the probation officer has reason to suspect or reasonable concern, they can require that, and that's all that says. So I'm going to overrule your objection." *Id.* at 15-16. Responding to counsel's argument that, in his experience, "[i]f that box is checked, then probation is going to submit her to drug testing," the magistrate judge stated that "[i]t's part of our standard conditions in the Southern district" and that "the probation officer has discretion at this point to decide whether to test . . . ." *Id.* at 16.[3]

The testing condition was also contained in the order setting forth the conditions of release as condition "n," requiring that Notgrass "submit to testing for a prohibited substance if required by the pretrial services office or supervising officer." Dkt. No. 15 at 2. Such "testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing." *Ibid.* As part of that testing,

---

[3] The magistrate judge did not hear from the Government before overruling Notgrass' objection.

Notgrass "must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing." *Ibid.*

Later that same day, Notgrass filed a motion with the district court to review the magistrate judge's bond order. Dkt. No. 17. In it, she "requests that the District Court strike condition letter 'n' in the release order." *Id.* at 1. Notgrass renewed her argument that there "has never had any substance abuse issues" and there was "no evidence that substance abuse played a role in the charged offense." *Ibid.* Further, Notgrass had "no prior arrests, charges, or convictions – not even a traffic ticket." *Id.* at 2. Notgrass objected to the testing condition being imposed as a "standard" condition of bond as the Bail Reform Act does not set forth any standard conditions related to drug testing. Dkt. No. 17 at 2. In addition, "to the extent this condition is understood as providing ultimate discretion to the probation office to decide whether to impose drug testing this constitutes an improper delegation of judicial authority." *Ibid.*

The district court denied Notgrass' motion in an order entered on June 15, 2022.[4] Exhibit A. The district court concluded that in light of the nature of the offense, Notgrass' history, and the lack of "facts in the record [to] indicate she poses a significant risk of nonappearance," release was appropriate. *Id.* at 3. The district court

---

[4] The district court ruled before the Government responded to Notgrass' motion because it was denying the motion and, thus, the Government suffered no "unfair prejudice." Exhibit A at 1, n.1.

5

also noted the "non-violent and non-drug related nature of the alleged offense" and concluded that "the danger posed to the community appears minimal." *Ibid*. "Additionally," the district court concluded, "there is no indication that [Notgrass] has any notable criminal history or history of substance abuse." *Ibid*. Nonetheless, the offense charged in the indictment was one of "willful and knowing theft and conversion of funds on a recurring basis" and that "there appears to be sufficient evidence to support charging multiple criminal acts." *Ibid*. The district court noted that Notgrass faced a potential sentence of up to ten years in prison, concluding that with "this looming risk of substantial punishment, supervision is appropriate to ensure [Notgrass] does not engage in any criminal, destructive or otherwise harmful conduct during this pre-trial period." *Id.* at 3-4. Although "the danger to [Notgrass], other persons, and the community is limited based upon the scant record, the Court cannot determine with certainty that zero danger exists." *Id.* at 4. Therefore, the district court concluded, the testing condition was "a piece of the least restrictive combination of conditions" to assure Notgrass' presence in court and ensure the safety of the community. *Ibid*.

In response to Notgrass' argument that the magistrate judge imposed the testing condition because it was "standard," the district court explained that "while this condition may not be officially designated as 'standard' under the Bail Reform Act, it is regularly imposed" and the magistrate judge's "use of the term . . . reflects an

6

accurate description of the regular imposition of the condition." Exhibit A at 4. The district court rejected Notgrass' argument that the condition improperly delegated judicial authority to the probation officer, concluding that "it provides that if the probation officer, through supervision of the defendant, observes something that warrants testing, the probation officer is authorized to carry out that testing." *Id.* at 4-5. In addition, the discretion granted is not to "decide if testing is allowed" as the district court "has already determined that drug testing is, in fact, authorized but limited its use solely to the extent that the probation officer . . . deems it necessary."

## ARGUMENT

**I.     The imposition of a condition of release allowing the probation officer to require Notgrass to submit to drug testing, in spite of having no history of substance use or abuse, is not consistent with the Bail Reform Act. In the alternative, such a condition violates the Eighth Amendment.**

This appeal arises from the charge that Notgrass stole money from the United States. She has no criminal record, no history of drug use or substance abuse, and no indication that she is a threat to the community. Nonetheless, courts below imposed a condition of release that Notgrass submit to drug testing, if her probation officer deems it appropriate. That condition does not conform to the requirements of the Bail Reform Act and, if it does, it violates the Eighth Amendment. This Court should vacate the condition and return this case to the district court.

### A. The record in this case does not support the imposition of the testing condition under the Bail Reform Act.

The power to detain a defendant pending trial comes from the Bail Reform Act of 1984. 18 U.S.C. § 3141, *et seq.* In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court upheld the constitutionality of the act because it "carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Id.* at 747. That is because, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755. Thus, a court determining whether to release a defendant to bond "should bear in mind that it is only a 'limited group of offenders' who should be denied bail." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987), quoting S. Rep. No. 225, 98th Cong., 2d Sess. 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189. As one court explained, "it is our duty, if possible, to set conditions under which appellant may be released." *United States v. Harrison*, 405 F.2d 355, 357 (D.C. Cir. 1968).

Under § 3142(b), a defendant should be released on a personal recognizance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." If the judicial officer makes such a determination, it still "shall order the pretrial release of the person" subject to conditions imposed to ensure the defendant's appearance and the safety of the community. 18 U.S.C.

8

§ 3142(c). Only two such conditions are mandatory – that the defendant not commit another crime and that the defendant cooperate in the collection of a DNA sample if such collection is authorized by law. 18 U.S.C. § 3142(c)(A). The statute sets forth several other conditions that the judicial officer "may" impose, but it is not required to do so. 18 U.S.C. § 3142(c)(B). Among those conditions are requirements to abstain from the excessive use of alcohol or certain drugs, but drug testing is not among the listed potential conditions. 18 U.S.C. §. 3142(c)(B)(ix).[5]

The factors a court must consider in setting conditions of release are set forth in 18 U.S.C. § 3142(g): the (1) nature and circumstances of the offenses charged; (2) weight of the evidence against the defendant; (3) history and characteristics of the defendant, including family ties, the person's character, ties to the community, and criminal history; and (4) nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. On matters of release, it is ultimately the Government's burden to prove that either release is not appropriate or certain conditions should apply as a requirement of release. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001); *United States v. Ingram*, 415 F. Supp. 3d 1072, 1079 (N.D. Fla. 2019). *United States v. Sabhnani*, 493 F.3d 63, 68, n.5 (2d Cir. 2007); *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987).

---

[5] By contrast, the supervised release statute requires a drug testing condition be imposed, unless the district court specifically concludes it should not apply. 18 U.S.C. § 3583(d).

9

The magistrate judge described the condition as "standard" and the district court called it "regularly imposed," but neither is a sufficient basis for imposition of a condition under the Bail Reform Act.[6] Exhibit A at 4; Exhibit B at 16. In the related area of the imposition of supervised release conditions, this Court has repeatedly emphasized that, outside of conditions imposed as required by statute, other conditions must be imposed only on a case-by-case basis after an individualized assessment of the defendant's offense and characteristics. *See, e.g., United States v. Rogers*, 961 F.3d 291, 297 (4th Cir. 2020)(non-mandatory conditions "could not be imposed . . . without an exercise of the district court's discretion"). A court cannot have more discretion to impose liberty-restricting conditions upon a person merely charged with an offense than it can upon a person who has been convicted and sentenced for that offense. The testing condition, therefore, is only appropriate if, under the § 3142(g) factors, it is supported by the record. It is not.

First, the nature and circumstances of the offense charged do not support the imposition of the testing condition. The district court noted that the "crime charged is not a violent crime" and had a "non-violent and non-drug related nature." Exhibit A at 3. It is, at bottom, a theft offense which does not implicate the use of drugs in any

---

[6] In fact, it is a "standard" condition, in that it is set forth in Southern District of West Virginia Local Rule of Criminal Appeal 5.1(c)(4). Nonetheless, a local rule cannot mandate any particular bond condition beyond those expressly mandated by the Bail Reform Act.

way. Nor is there any evidence that the offense was caused because Notgrass was a user of or addicted to drugs in a way that led her into fraudulent behavior. Therefore, it cannot be said that the nature and circumstances of the offense support the imposition of the testing condition.

Second, the weight of the evidence against Notgrass does not support the imposition of the testing condition. All the record demonstrates about the evidence against Notgrass is that it was sufficient to obtain an indictment – a famously low bar. Partly that is because the burden of proof is only probable case, "less demanding than a standard requiring a preponderance of the evidence." *United States v. Ortiz*, 669 F.3d 439, 446 (4th Cir. 2012). It is also because the modern grand jury is a one-sided, prosecution-driven endeavor designed to produce indictments. *See* Niki Kuckes, *The Useful, Dangerous Fiction of Grand Jury Independence*, 41 Am. Crim. L. Rev. 1 (2004)(the grand jury process "is championed by the Department of Justice, which generally opposes any changes to grand jury procedures, even though it is federal prosecutors who are ostensibly being 'checked' by the grand jury process"); Roger A. Fairfax, Jr. *Should the American Grand Jury Survive Ferguson?*, 58 How. L.J. 825, 828 (2015)(in the grand jury "the deck is stacked in favor of the government"); Ben Casselman, *It's Incredibly Rare for a Grand Jury to Do What Ferguson's Just Did*, Five Thirty Eight (Nov. 24, 2014)("U.S. attorneys prosecuted 162,000 federal cases in 2010 . . . . Grand juries

11

declined to return an indictment in 11 of them.").[7] In addition, the weight of the evidence is "the least important of the various factors." *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990)(cleaned up); *see also*, 18 U.S.C. § 3142(j); *United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987)(presumption that "every person charged is likely to flee simply because the evidence against him appears to be weighty" would be "tantamount to a presumption of guilt, a presumption that our system simply does not allow").  As there is nothing in the record beyond a bare finding of probable cause, the weight of the evidence cannot support the imposition of the testing condition.

Third, the history and characteristics of Notgrass do not support the imposition of the testing condition. She has no criminal record. Exhibit D at 3. She has no history of substance abuse. She is employed. *Id.* at 2. She is married with two children and currently lives in Missouri where she helps with the care of her in-laws. *Id.* at 1. Per the recommendation of the probation officer, Notgrass is "not assessed as a risk of nonappearance for further court proceedings" and there "are no known factors indicating the defendant poses a risk to the community." *Id.* at 3. In light of Notgrass' history, there is no basis for imposing the testing condition.

---

[7] Available online at http://fivethirtyeight.com/datalab/ferguson-michael-brown-indictment-darren-wilson/ (last visited June 27, 2022).

Finally, there is no indication from the record that Notgrass poses any risk to the community, much less one related to illicit drug use. The district court called the danger Notgrass poses to the community "minimal" but provides no justification for that conclusion. Exhibit A at 3. The most the district court can do is point to the fact that Notgrass faces a maximum statutory sentence of ten years in prison if convicted of the offense for which she is charged. That "looming risk of punishment" requires supervision to ensure that Notgrass "does not engage in any criminal, destructive or otherwise harmful conduct during this pre-trial period." *Id.* at 3-4. But that reasoning cannot support the imposition of the testing condition because it would apply in nearly every case – making "mandatory" what is a discretionary condition. Congress has shown that when it wants the penalty faced by a defendant to play a key role in release decisions it makes that plain. *See* 18 U.S.C. § 3142(e)(3)(creating classes of offenses, partly based on maximum penalties, in which a rebuttable presumption of detention applies). Without more in the record to suggest that the potential maximum sentence Notgrass faces may drive her particularly to use illegal drugs, the mere fact of the applicable maximum sentence cannot support the imposition of the testing condition.

Bond conditions are designed to ensure a defendant appears in court as required and does not pose a danger to the public. Nothing in the record of this case suggests that the testing condition forwards either goal of bond, while greatly

13

restricting Notgrass' liberty. Therefore, it is not an appropriate condition in this case under the Bail Reform Act.

### B. The testing condition also violates the Eighth Amendment.

The Eighth Amendment states that "[e]xcessive bail shall not be required." In affirming the constitutionality of the Bail Reform Act, the Supreme Court held that the "only arguable substantive limitation of the Bail Clause is that the Government's *proposed conditions of release* or detention not be 'excessive' in light of the perceived evil" with which a defendant is charged. *Salerno*, 481 at 754 (emphasis added). The limitations of the Eighth Amendment thus apply not just to the amount of bail required but to the conditions imposed as part of a defendant's release. *See, e.g., United States v. Stephens*, 594 F.3d 1033 (8th Cir. 2010)(analyzing mandatory release conditions from the Adam Walsh Act under the Eighth Amendment).

Assuming, *arguendo*, that the Bail Reform Act allows the imposition of the testing condition on this record, the imposition of the condition therefore violates the Eighth Amendment. The "perceived evil" in this case is Notgrass' alleged theft of funds from the United States. It had nothing to do with the use or sale of drugs. Notgrass has absolutely no history of drug use or abuse. The testing condition has no connection to the "perceived evil" with which Notgrass has been charged. It is therefore "excessive" within the meaning of the Eighth Amendment.

## II. The testing condition is an improper delegation of judicial authority because it vests in a probation officer the discretion whether to order Notgrass to submit to drug testing.

The testing condition does not order Notgrass to be drug tested. Rather, it allows her probation officer to order Notgrass to be tested if they decide it is necessary. In the context of supervised release conditions, this Court has held that similar delegation of authority from the district court to probation officers is inappropriate. It is inappropriate in the pretrial release situation as well.

In *United States v. Van Donk*, 961 F.3d 314 (4th Cir. 2020), the defendant challenged a condition of his supervised release requiring him to comply with the rules of a sex-offender treatment program. *Id.* at 316. Among the arguments he made was that "the district court improperly delegated a core judicial function—setting conditions of release—to Van Donk's treatment provider." *Id.* at 327. This Court rejected that argument, but in doing so discussed the limits of judicial delegation. The "type of duty that the court may delegate is limited by Article III" of the Constitution, which prohibits a court from "delegating core judicial functions." *Ibid.* (cleaned up). One of those core functions, this Court recognized, was "whether a defendant must attend a treatment program." *Ibid.* However, "a court may delegate the details with respect to the selection and schedule of the program." *Ibid* (cleaned up).

Other courts, applying the same analysis, have struck down conditions with the type of delegation as the testing condition contains. In *United States v. Peterson*, 248

15

F.3d 79 (2d Cir. 2001), the defendant challenged a supervised release condition that he participate in a sex-offender treatment program "as directed by the U.S. Probation Office." *Id.* at 84-85. Finding the language ambiguous, the court concluded that if the defendant "is required to participate in a mental health intervention only if directed to by the probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer." *Id.* at 85; *see also United States v. Kent*, 209 F.3d 1073, 1079 (8th Cir. 2000)(the "lower court improperly delegated a judicial function to [the] probation officer when it allowed the officer to determine whether [defendant] would undergo counseling"); *United States v. Nash*, 438 F.3d 1302, 1306 (11th Cir. 2006)(improper delegation where court imposed a condition giving probation officer discretion to require defendant to participate in mental health treatment). If the condition only delegated the "details with respect to the selection and schedule of the program, such delegation is proper." *Ibid.* Ultimately, the court vacated the condition and remanded for resentencing. *Ibid.*

In rejecting Notgrass' motion, the district court concluded that there was no improper delegation here because the testing condition "provides that if the probation officer, through supervision of the defendant, observes something that warrants testing, the probation officer is authorized to carry out that testing." Exhibit A at 4-5. That conclusion simply highlights the improper delegation of the testing condition. It is similar to the vacated conditions in *Peterson*, *Kent*, and *Nash* in that it does not order

16

testing and then leave the details to the probation officer, rather it puts the decision about whether to test at all in the hands of the probation officer. Nor does the testing condition set forth any triggers or conditions that would prompt testing, clear language that would put Notgrass and her probation officer on notice of when testing might occur. That the district court relies on the probation officer to "observe[] something that warrants testing" demonstrates that the authority to order testing has been improperly delegated to the probation officer.

## CONCLUSION

For the reasons set forth above, the district court erred in imposing upon Notgrass, as a condition of her release pending trial, a condition that allows for drug testing if her probation officer decides it is necessary. The offense for which Notgrass was charged has nothing to do with drugs. She has no criminal history and no history of substance use or abuse. For that reason, the testing condition is improper under the Bail Reform Act and the Eighth Amendment. In addition, it constitutes an improper delegation of judicial authority to the probation officer. For either of those reasons, this Court should vacate the condition.

Respectfully submitted,

**RHONDA NOTGRASS**
By Counsel

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

s/Jonathan D. Byrne
Jonathan D. Byrne
Appellate Counsel
Office of the Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: jonathan_byrne@fd.org

s/Rhett H. Johnson
Rhett H. Johnson
Assistant Federal Public Defender
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: rhett_johnson@fd.org

## CERTIFICATE OF SERVICE

I do hereby certify that on **June 28, 2022,** the foregoing **MEMORANDUM BRIEF** was electronically filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

>Kathleen E. Robeson
>Assistant United States Attorney
>United States Courthouse, Room 4000
>300 Virginia Street East
>Charleston, West Virginia 25301
>Email: kathleen.robeson@usdoj.gov

By:  s/Jonathan D. Byrne
Jonathan D. Byrne
Appellate Counsel
Room 3400, United States Courthouse
300 Virginia Street East
Charleston, West Virginia 25301
E-mail: jonathan_byrne@fd.org